# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DERRICK NELLON** | **CIVIL ACTION** |
| **versus** | **NO. 10-4430** |
| **N. BURL CAIN, WARDEN** | **SECTION: "F" (1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Derrick Nellon, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On February 20, 2003, he was convicted of second degree murder

under Louisiana law.¹ On April 14, 2003, he was sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.² On April 26, 2005, the Louisiana Fifth Circuit Court of Appeal affirmed that conviction and sentence.³

On April 11, 2006, petitioner filed an application for post-conviction relief with the state district court.⁴ The court denied petitioner's claims on May 1, 2006,⁵ and August 17, 2006,⁶ as well as his "Traverse"⁷ on August 25, 2006.⁸ His related writ applications were thereafter denied

---

¹ State Rec., Vol. V of VII, transcript of February 20, 2003, p. 289; State Rec., Vol. II of VII, minute entry dated February 20, 2003; State Rec., Vol. II of VII, jury verdict form.

² State Rec., Vol. V of VII, transcript of April 14, 2003, p. 4; State Rec., Vol. II of VII, minute entry dated April 14, 2003.

³ State v. Nellon, 902 So.2d 434 (La. 2005) (No. 04-KA-1253); State Rec., Vol. II of VII.

⁴ State Rec., Vol. II of VII. The United States Fifth Circuit Court of Appeals has held that federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned with certainty from the record with respect to the *pro se* state court filings in this case, the Court will use the signature dates as the filing dates, in that the applications were obviously placed in the mail no earlier than the date they were signed.

⁵ State Rec., Vol. II of VII, Order dated May 1, 2006.

⁶ State Rec., Vol. II of VII, Order dated August 17, 2006.

⁷ State Rec., Vol. II of VII.

⁸ State Rec., Vol. II of VII, Order dated August 25, 2006.

by the Louisiana Fifth Circuit Court of Appeal on October 2, 2006,[9] and by the Louisiana Supreme Court on September 14, 2007.[10]

On October 5, 2007, petitioner, through counsel, filed with the state district court a motion for new trial.[11] That motion was denied on October 12, 2007.[12] Petitioner, again through counsel, then filed with the Louisiana Fifth Circuit Court of Appeal a related writ application[13] which was dismissed as untimely on January 16, 2008.[14] Petitioner thereafter filed a *pro se* writ application with the Court of Appeal, again seeking review of the October 12 denial of a new trial.[15] On July 28, 2008, that writ application was denied on the ground that his original motion for new trial was untimely filed.[16] Without assigning additional reasons, the Louisiana Supreme Court then

---

[9] State *ex rel.* Nellon v. State, No. 06-KH-710 (La. App. 5th Cir. Oct. 2, 2006); State Rec., Vol. II of VII.

[10] State *ex rel.* Nellon v. State, 963 So.2d 391 (La. 2007) (No. 2006-KH-2720); State Rec., Vol. II of VII. During the course of those first post-conviction proceedings, petitioner, through counsel, filed a second application for post-conviction relief on May 30, 2006. State Rec., Vol. II of VII. That application was denied on June 13, 2006. State Rec., Vol. II of VII, Order dated June 13, 2006.

[11] State Rec., Vol. II of VII.

[12] State Rec., Vol. II of VII, Order dated October 12, 2007.

[13] State Rec., Vol. VI of VII.

[14] State *ex rel.* Nellon v. State, No. 08-KH-3 (La. App. 5th Cir. Jan. 16, 2008); State Rec., Vol. III of VII.

[15] State Rec., Vol. VI of VII.

[16] State v. Nellon, No. 08-KH-534 (La. App. 5th Cir. July 28, 2008); State Rec., Vol. III of VII.

denied his related writ application on August 12, 2009,[17] and also denied reconsideration on October 2, 2009.[18]

In the interim, it had come to light that the Louisiana Fifth Court of Appeal had for years used improper procedures for the review and disposition of *pro se* post-conviction applications. As a result, on November 7, 2008, petitioner filed with the Louisiana Supreme Court an original petition for writ of certiorari challenging those procedures.[19] On April 24, 2009, the Louisiana Supreme Court transferred that application to the Louisiana Fifth Circuit Court of Appeal for consideration pursuant to the procedures set forth in State v. Cordero, 993 So.2d 203 (La. 2008).[20] The Louisiana Supreme Court then denied petitioner's application for rehearing on November 25, 2009.[21]

While the transferred application was pending before the Court of Appeal, petitioner filed with that court three supplements to the application, as well as another writ application which was docketed separately. The Court of Appeal consolidated those matters and thereafter denied

---

[17] State *ex rel.* Nellon v. State, 15 So.3d 1005 (La. 2009) (No. 2008-KH-2413); State Rec., Vol. III of VII.

[18] State *ex rel.* Nellon v. State, 18 So.3d 111 (La. 2009) (No. 2008-KH-2413); State Rec., Vol. III of VII.

[19] Petitioner alleges that the application was filed on that date. Rec. Doc. 19, p. 4. That allegation will be accepted as true for the purpose of this proceeding.

[20] State *ex rel.* Nellon v. State, 7 So.3d 1217 (La. 2009) (No. 2008-KH-2794); State Rec., Vol. VI of VII.

[21] State *ex rel.* Nellon v. State, 22 So.3d 176 (La. 2009) (No. 2008-KH-2794); State Rec., Vol. VI of VII.

relief on May 10, 2011.[22] Petitioner sought review of that judgment by the Louisiana Supreme Court,[23] and that writ application currently remains pending.

While those proceedings were ongoing, petitioner filed two additional untimely state applications. First, on August 27, 2010, he filed with the state district court a "Petition for Exhaustion Review of Actual Innocence Claim for Supplemental Purposes."[24] That application was denied as untimely filed on September 13, 2010.[25] Second, on October 19, 2010, he filed with the Louisiana Supreme Court a writ application seeking review of the Court of Appeal's 2005 judgment affirming his conviction and sentence.[26] That application was denied as untimely filed on October 21, 2011.[27]

On or about November 24, 2010, during the midst of the foregoing proceedings, petitioner filed this "protective" application for *habeas corpus* relief along with a request that the

---

[22] State *ex rel.* Nellon v. State, No.09-WR-569 c/w No. 10-KH-935 (La. App. 5th Cir. May 10, 2011); State Rec., Vol. VI of VII.

[23] See Rec. Doc. 19-1, pp. 53-78.

[24] State Rec., Vol. III of VII.

[25] State Rec., Vol. III of VII, Order dated September 13, 2010.

[26] State Rec., Vol. VII of VII. Petitioner originally attempted to file that application in September, 2010; however, the Louisiana Supreme Court returned his document unfiled and advised him that he must seek post-conviction relief. Petitioner then objected to the court's action and returned it for filing in October, at which time it was accepted for filing. See Rec. Doc. 21-1, pp. 16-19.

[27] State *ex rel.* Nellon v. State, 73 So.3d 374 (La. 2011) (No. 2010-KH-2402); Rec. Doc. 21-1, p. 1.

matter be stayed while he continued to exhaust his remedies in the state courts.[28] See Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005) (authorizing a prisoner who is still seeking state post-conviction relief to file a "protective" petition in federal court and ask the federal court to stay and abey the federal *habeas* proceedings until state remedies are exhausted). The matter was thereafter opened as an active case in May, 2011, upon petitioner's payment of the required filing fee.

On September 1, 2011, the state filed its response in this matter arguing that a stay was inappropriate and that petitioner's federal application is untimely.[29] For the following reasons, the undersigned finds that the state is correct.

In Rhines v. Weber, 544 U.S. 269 (2005), the United States Supreme Court explained that, in limited circumstances, it is appropriate for a federal district court to stay *habeas corpus* proceedings. In Rhines, the petitioner had filed a "mixed petition" containing both exhausted and unexhausted claims. He wanted to stay the federal proceedings, return to state court to pursue his unexhausted claims, and then come back to federal court for review of his perfected petition. The Supreme Court noted that the entry of a stay is permissible in such proceedings but noted:

> Staying a federal habeas petition frustrates AEDPA's objective of
> encouraging finality by allowing a petitioner to delay the resolution
> of the federal proceedings. It also undermines AEDPA's goal of

---

[28] Rec. Doc. 3. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). That date cannot be determined from the record, and petitioner's federal application is undated; however, the application was received by this Court for filing on November 24, 2010.

After filing this federal application, petitioner filed with the state district court a "Petition for Out-of-Time Appeal Nunc Pro Tunc" on or about November 29, 2011. Rec. Doc. 21-1, pp. 3-14. The status of that motion is unknown.

[29] Rec. Doc. 17.

> streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. Cf. Duncan [v. Walker, 533 U.S. 167, 180 (2001)] ("[D]iminution of statutory incentives to proceed first in state court would ... increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce").
>
> For these reasons, stay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Rhines, 544 U.S. at 277.

The state argues that a stay is inappropriate because petitioner did not file his protective petition until after expiration of the applicable statute of limitations. Clearly, claims submitted in an untimely federal application cannot serve as a basis for relief and, therefore, qualify as "plainly meritless." Accordingly, if petitioner's protective federal application was already untimely when filed, a stay is not warranted. Madden v. Thaler, No. 3:10-CV-1461, 2011 WL 2162910, at *7 (N.D. Tex. May 9, 2011), adopted, 2011 WL 2164154 (N.D. Tex. June 2, 2011); Beane v. Quartman, No. 3:09-CV-0940, 2009 WL 2252060, at *3 (N.D. Tex. July 27, 2009); see also Fenlon v. Thaler, Civ. Action No. H-11-1385, 2011 WL 6326099, at *13 (S.D. Tex. Dec. 16, 2011).

The undersigned finds that petitioner's protective federal application was in fact untimely filed. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally

requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final." 28 U.S.C. § 2244(d)(1)(A).[30] On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. See Foreman, 383 F.3d at 338-39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693. Louisiana Supreme Court Rule X, § 5(a) states that an application "to review a judgment of the court of appeal either after an appeal to that court ... or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal."

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

---

[30] Although the statute has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, petitioner does not dispute the state's contention that § 2244(d)(1)(A) is the provision applicable in the instant case.

In the instant case, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence on April 26, 2005,[31] and mailed notice of its judgment on that same date.[32] Therefore, for federal purposes, his state criminal judgment became "final" on May 26, 2005, when his period expired for filing a writ application with the Louisiana Supreme Court. Accordingly, under § 2244(d)(1)(A), his period for seeking federal *habeas corpus* relief commenced on that date and expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling. The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2).

After three hundred nineteen (319) days elapsed, petitioner tolled the federal limitations period on April 11, 2006, by filing a post-conviction application with the state district court. Tolling then continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004). Therefore, at the latest, tolling ceased when the Louisiana Supreme Court denied relief on September 14, 2007.[33]

---

[31] State v. Nellon, 902 So.2d 434 (La. 2005) (No. 04-KA-1253); State Rec., Vol. II of VII.

[32] State Rec., Vol. V of VII, Certificate of Mailing.

[33] State *ex rel.* Nellon v. State, 963 So.2d 391 (La. 2007) (No. 2006-KH-2720); State Rec., Vol. II of VII. A petitioner receives no additional tolling credit for the period during which he could have sought review by the United States Supreme Court with respect to the denial of post-conviction relief. Lawrence v. Florida, 549 U.S. 327, 332 (2007); Ott v. Johnson, 192 F.3d 510, 512-13 (5th Cir. 1999).

At that point, petitioner had forty-six (46) days of the federal limitations period remaining. Accordingly, he had only until October 30, 2007, either to again toll the limitations period or to file a federal application.

The record reflects that petitioner had only one state application for state post-conviction relief or other collateral review pending during that period, namely his motion for new trial filed on October 5, 2007. However, as noted, the Louisiana Fifth Circuit Court of Appeal ultimately held that motion was untimely filed,[34] and the Louisiana Supreme Court thereafter denied petitioner's related writ application without assigning additional reasons.[35] As a result, petitioner is not entitled to *any* statutory tolling for that application. The United States Supreme Court has conclusively held that "time limits, no matter their form, are 'filing' conditions"; when the state courts have rejected a state application as untimely, it cannot be considered "properly filed" so as to entitle the petitioner to statutory tolling. Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005). As a result, where, as here, "a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." Id. at 414 (internal quotation marks and brackets omitted).

Because petitioner had no other properly-filed applications for state post-conviction relief or other collateral review pending at any time prior to October 30, 2007, he clearly is not entitled to further statutory tolling.[36]

---

[34] State v. Nellon, No. 08-KH-534 (La. App. 5th Cir. July 28, 2008); State Rec., Vol. III of VII.

[35] State *ex rel.* Nellon v. State, 15 So.3d 1005 (La. 2009) (No. 2008-KH-2413); State Rec., Vol. III of VII.

[36] The Court notes that petitioner filed numerous state applications after that date. However, applications filed after the expiration of the federal statute of limitations have no bearing on the

The Court must next consider equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 130 S.Ct. 2549, 2560 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 2562 (internal quotation marks omitted); see also Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

It is additionally noted that, on September 15, 2011, this Court ordered petitioner to respond to the state's argument that his federal limitations period expired prior to the filing of his federal application.[37] In his responses, petitioner argues that he is not untimely because of the additional review he was accorded as a result of State v. Cordero, 993 So.2d 203 (La. 2008).[38]

---

timeliness of a *habeas* petitioner's federal application. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Simply put, once the federal limitations periods expired, "[t]here was nothing to toll." Butler v. Cain, 533 F.3d 314, 318 (5th Cir. 2008).

[37] Rec. Doc. 18.

[38] Rec. Doc. 19, pp. 1-2; Rec. Doc. 20, p. 2.

In 2007, it came to light that the Louisiana Fifth Court of Appeal had for many years employed a procedure which ran afoul of the state constitution's requirements. Id. at 204-05. Specifically, from February 8, 1994, to May 21, 2007, the Louisiana Fifth Circuit assigned a single judge to review all *pro se* post-conviction writ applications despite the state constitution's requirement that the Court of Appeal "sit in panels of at least three judges." La. Const. art. V, § 8(A). As a result, in Cordero, the Louisiana Supreme Court decided that writ applications alleging this deficiency during the relevant period would be remanded to the Louisiana Fifth Circuit for a properly conducted re-review. As noted, this occurred in petitioner's case.[39]

However, the additional review petitioner has been accorded as a result of Cordero is of no moment, because that review did not "reset" his federal statute of limitations. Where, as here, a petitioner's federal limitations period expired *prior* to Cordero, the additional review accorded as a result of the Cordero procedure is simply irrelevant. See Thomas v. Tanner, Civ. Action No. 10-1795, 2011 WL 4344605, at *4-8 (E.D. La. Aug. 23, 2011), adopted, 2011 WL 4345076 (E.D. La. Sept. 15, 2011).

Because petitioner is entitled to neither further statutory tolling nor equitable tolling, his federal application for *habeas corpus* relief had to be filed on or before October 30, 2007, in order to be timely. In that petitioner's federal application was not filed until November of 2010, it is untimely.[40]

---

[39] State *ex rel.* Nellon v. State, 7 So.3d 1217 (La. 2009) (No. 2008-KH-2794); State Rec., Vol. VI of VII.

[40] Lastly, out of an abundance of caution, the Court will make one additional observation. Although the issue has not been raised by the parties, one could perhaps argue that petitioner's filing deadline was extended for an additional eighty-six (86) days beyond the normal deadline due to

**RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that petitioner's request for a stay be **DENIED** and his petition for federal *habeas corpus* relief filed be **DISMISSED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[41]

New Orleans, Louisiana, this twenty-fifth day of January, 2012.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

former Chief Judge Helen G. Berrigan's suspension of all prescriptive periods in this Court from September 1, 2005, through November 25, 2005, as a result of Hurricane Katrina. See, e.g., Mark v. Michael, Civ. Action No. 08-1261, 2008 WL 4365929, at *2 (E.D. La. Sept. 23, 2008). However, even under that scenario, petitioner's federal deadline would have expired no later than January 24, 2008, and his federal application would still be untimely.

[41] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.